UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
G&G CLOSED CIRCUIT EVENTS, LLC,

     Plaintiff,        REPORT AND
                 RECOMMENDATION
  -against-          20 CV 4278 (PKC)(RML)

ELVIN GONZALEZ, individually and
d/b/a L'MULATO BARBERSHOP,

     Defendant.
----------------------------------------------------------X
LEVY, United States Magistrate Judge:

   By order dated January 6, 2022, the Honorable Pamela K. Chen, United States

District Judge, referred plaintiff's motion for default judgment to me for report and

recommendation.  For the reasons explained below, I respectfully recommend the plaintiff's

motion for default judgment be denied.

**BACKGROUND AND FACTS**

   Plaintiff G&G Closed Circuit Events, LLC ("plaintiff") commenced this action on

September 11, 2020, alleging violations of the Federal Communications Act of 1934 (the

"FCA"), codified as amended, 47 U.S.C. §§ 553 and 605, and seeking statutory damages,

enhanced damages, attorney's fees, and costs.  (See Complaint, dated Sept. 11, 2020 ("Compl."),

Dkt. No. 1.)  Plaintiff brought this action against defendant Elvin Gonzalez ("defendant" or

"Gonzalez"), individually and d/b/a L'Mulato Barbershop, and Gonzalez was properly served on

November 20, 2020.  (Affidavit of Service of Roberto Urena, sworn to Nov. 30, 2020, Dkt. No.

5.)  The Clerk of the Court noted defendant's default pursuant to Federal Rule of Civil Procedure

55(a) on January 8, 2021.  (Clerk's Entry of Default, dated Jan. 8, 2021, Dkt. No. 7.)  On

February 8, 2021, plaintiff moved for default judgment.  (Motion for Default Judgment, dated

Feb. 8, 2021, Dkt. No. 8.)  Judge Chen denied plaintiff's motion on September 29, 2021, finding

that plaintiff had failed to establish that Gonzalez could be considered a corporate entity.

(Memorandum & Order, dated Sept. 29, 2021 ("M&O"), Dkt. No. 9, at 5.)  Judge Chen declared

that the court would treat "the Complaint here–which names and has been served on only

Defendant Gonzalez–as one against Defendant solely in an individual capacity."  (Id. at 6.)  The

court then held that plaintiff had failed to sufficiently establish a theory of contributory liability

or vicarious liability against Gonzalez, and therefore denied plaintiff's motion.  (Id. at 6, 10.)

By letter dated October 13, 2021, plaintiff requested leave to file an amended

complaint solely against "individual defendant, Elvin Gonzalez" and not the corporation.  (Letter

of Robert B. Hunter, Esq., dated Oct. 13, 2021, Dkt. No. 10.)  Judge Chen granted that request,

and plaintiff filed an amended complaint on October 19, 2021, seeking statutory damages,

enhanced damages, attorney's fees, and costs pursuant to 47 U.S.C. §§ 553 and 605.  (See

Amended Complaint, dated Oct. 19, 2021 ("Am. Compl."), Dkt. No. 14; Plaintiff's

Memorandum of Law in Support of Application for Default Judgment, dated Jan. 6, 2022 ("Pl.'s

Mem."), Dkt. No. 18-1.)  Gonzalez was properly served on October 28, 2021.  (Affidavit of

Service of Roberto Urena, sworn to Nov. 1, 2021, Dkt. No. 15.)  The Clerk of the Court noted

defendant's default pursuant to Federal Rule of Civil Procedure 55(a) on December 16, 2021.

(Clerk's Entry of Default, dated Dec. 16, 2021, Dkt. No. 17.)  On January 6, 2022, plaintiff again

moved for default judgment against Gonzalez.  (Motion for Default Judgment, dated Jan. 6,

2022, Dkt. No. 18.)  Judge Chen referred plaintiff's motion to me for report and

recommendation.  (Order Referring Motion, dated Jan. 6, 2022.)  To date, the court has received

no communication from defendant.

Plaintiff, a California corporation, alleges that it entered into a licensing agreement with Golden Boy Promotions, LLC and "was granted the exclusive nationwide commercial distribution (closed-circuit) rights" to the September 16, 2017 telecast of the Saul Alvarez v. Gennady Golovkin, IBF World Middleweight Championship Fight (the "Program"). (Am. Compl. ¶¶ 6, 16.)  Pursuant to the licensing agreement, plaintiff also alleges that it entered into sublicensing agreements with several commercial establishments to broadcast the Program, including undercard or preliminary bouts, in exchange for a fee.  (Id. ¶¶ 16, 20.)  Establishments that entered into sublicensing agreements with plaintiff were provided with the necessary equipment to receive the encrypted signal, or the establishment's cable or satellite provider would be notified to "unscramble the reception of the Program" for the entity.  (Affidavit of Nicolas J. Gagliardi, sworn to Jan. 19, 2021 ("Gagliardi Aff."), Dkt. No. 18-2, ¶ 11.)  For establishments with a maximum capacity of 100, such as L'Mulato Barbershop, the sublicensing fee was $2,500.  (See id. ¶ 8, Ex. 2.)

L'Mulato Barbershop is a commercial establishment located at 508 40th Street in Brooklyn, New York.  (Am. Compl. ¶¶ 7, 8.)  At all relevant times, Gonzalez was the owner and principal of L'Mulato Barbershop.  (Id. ¶ 8.)  Plaintiff avers that it did not sublicense the Program to Gonzalez, individually and d/b/a L'Mulato Barbershop.  (Id. ¶ 24; Gagliardi Aff. ¶ 3.)  However, plaintiff asserts that a hired auditor entered L'Mulato Barbershop on the date in question and observed one television showing the Program with approximately ten patrons present.  (Am. Compl. ¶ 23; Affidavit of Annmarie Lubrano, sworn to Sept. 29, 2017 ("Lubrano Aff."), annexed as Ex. 5 to the Declaration of Robert B. Hunter, Esq., dated Jan. 5, 2022 ("Hunter Decl."), Dkt. No. 18-3.)  The auditor reported that she did not have to pay a cover charge.  (See Lubrano Aff.)

3

Plaintiff contends that its program "cannot be mistakenly, innocently or accidentally intercepted." (Gagliardi Aff. ¶ 9.) Thus, plaintiff asserts, the only means by which the Program could have been shown at L'Mulato Barbershop was if defendant unlawfully intercepted it. (Id. ¶ 10.) Pursuant to section 605 of the FCA, plaintiff seeks $7,500 in statutory damages and $22,500 in enhanced damages. (Pl.'s Mem. at 5.)

DISCUSSION

## A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for obtaining a default judgment. See Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must request entry of default by the Clerk of the Court. Id. (citing FED. R. CIV. P. 55(a)). Second, once default has been entered against the non-responsive party, the plaintiff "must apply to court for a default judgment." FED. R. CIV. P. 55(b)(2).

A defendant's default "is deemed to constitute a concession of all well pleaded allegations of liability." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Reality Corp., 973 F.2d 155, 158 (2d Cir. 1992). Once a plaintiff meets the requirements to enter default, the court "is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). The court then must "determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law." Id. Once liability has been established, the "decision whether to enter default judgment is committed to the district court's discretion." Greathouse v. JHS Sec. Inc., 784 F.3d 105, 116 (2d Cir. 2015). The court need not conduct a hearing to determine damages when it can rely on sufficiently

4

detailed affidavits and documentary evidence.  House v. Kent Worldwide Mach. Works, Inc.,
359 F. App'x 206, 207 (2d Cir. 2010).

    1.  Legal Standard

    Plaintiff asserts claims against Gonzalez pursuant to section 605 and 553 of the
FCA.  (See Am. Compl. ¶¶ 25-41.)  Section 605(a) of the FCA provides, in relevant part, that
"[n]o person not being authorized by the sender shall intercept any radio communication and
divulge or publish the . . . contents . . . of such intercepted communications to any person."  47
U.S.C. § 605(a).  The Second Circuit has applied section 605 to theft of cable communications.
Cmty. Television Sys., Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002).  Section 553(a)(1)
provides, in relevant part, that "[n]o person shall intercept or receive … any communications
service offered over a cable system unless authorized to do so by a cable operator or …
authorized by law."  47 U.S.C. § 553(a)(1).

    If a plaintiff successfully alleges that an establishment violated section 605 or
553, it may seek to impose liability against individual defendants under theories of contributory
infringement or vicarious liability.  See Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118
F.3d 955, 971 (2d Cir. 1997); J&J Sports Prods., Inc. v. Abdelraouf, No. 18 CV 2547, 2018 WL
7916309, at *7 (E.D.N.Y. Nov. 21, 2018).  To establish contributory infringement, a plaintiff
must show that the defendant "authorized the infringing use."  Softel 118 F.3d at 971 (alteration
omitted) (quoting Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 437 (1984)).  To
establish vicarious liability, a plaintiff must show that the defendant had a "right and ability to
supervise that coalesced with an obvious and direct financial interest in the exploitation of
copyrighted materials."  Id. (alterations omitted) (quoting Shapiro, Bernstein & Co. v. H.L.
Green Co., 316 F.2d 304, 307 (2d Cir. 1963)).

### B. Liability

Plaintiff seeks to hold Gonzalez liable in his individual capacity as the principal and owner of L'Mulato Barbershop. (Am. Compl. ¶ 8.) Plaintiff alleges that Gonzalez is both contributorily and vicariously liable. (Pl.'s Mem. at 3-4.)

To establish contributory liability, the plaintiff must "demonstrate that the individual defendant authorized the violation set forth in the Complaint." J&J Sports Prods., Inc. v. Dang, No. 19 CV 5112, 2020 WL 6364898, at *2 (E.D.N.Y. Oct. 13, 2020) (alterations and citation omitted). In the previous order, Judge Chen found that plaintiff had failed to establish contributory liability on the part of Gonzalez. (M&O at 7.) Although plaintiff then filed an Amended Complaint, the allegations against defendant have not substantively changed. (See Am. Compl. ¶¶ 7-14; Compl. ¶¶ 8-15.) Plaintiff still alleges, based on information and belief, that Gonzalez "specifically directed the employees of L'Mulato Barbershop to unlawfully intercept, receive and broadcast plaintiff's Program or intentionally intercepted, and/or published the Program at L'Mulato Barbershop himself" on September 16, 2017. (Am. Compl. ¶ 11; Compl. ¶ 12.) As Judge Chen noted, this statement contains the "barest of allegations" with the "legal standard couched as a factual allegation." (M&O at 7.) Therefore, the claims are insufficient to allege contributory liability. (Id.) See also, e.g., J&J Sports Prods., Inc. v. Dominguez, No. 19 CV 5110, 2020 WL 6434735, at *3 (E.D.N.Y Sept, 16, 2020) (finding no contributory liability on the part of the individual defendant where plaintiff "merely allege[d], upon information and belief, that" defendant directed employees to "unlawfully intercept, receive and broadcast" the Program), report and recommendation adopted, 2020 WL 6400700 (E.D.N.Y. Nov. 1, 2020); J&J Sports Prods., Inc. v. Dowling, No. 19 CV 2002, 2020 WL 7249287, at *3 (E.D.N.Y Mar. 6, 2020) (declining to find contributory liability where plaintiff

"merely allege[d], upon information and belief, that" defendant directed employees to "unlawfully intercept, receive and broadcast" the Program), report and recommendation adopted in relevant part, 2020 WL 6937861, at *1-2 (E.D.N.Y. Nov. 25, 2020); Dang, 2020 WL 6364898, at *4 (declining to find contributory liability where plaintiff made "conclusory allegations that Dang 'specifically directed the employees of El Tequilero' to broadcast the Event"); J&J Sports Prods., Inc. v. James, No. 17 CV 5359, 2018 WL 3850731, at *5 (E.D.N.Y. July 25, 2018) (finding plaintiff failed to "offer any evidence that James authorized–or even had the power to authorize–the illegal broadcast" and therefore did not provide sufficient evidence that defendant was contributorily liable), report and recommendation adopted, 2018 WL 3848921 (E.D.N.Y. Aug. 13, 2018).

Likewise, the claims set forth in the Amended Complaint have not substantively changed to establish vicarious liability on the part of Gonzalez. When courts in the Second Circuit have imposed vicarious liability under similar circumstances, "the plaintiff ha[s] typically made a strong[] showing of financial gain." J&J Sports Prods., Inc. v. LX Food Grocery Inc., No. 15 CV 6505, 2016 WL 6905946, at *3 (E.D.N.Y. Nov. 23, 2016). Plaintiffs have demonstrated a defendant's financial interest by showing that the defendant collected an admission fee or coverage charge on the night of the broadcast, that the defendant hosted many patrons in the establishment, or both. See, e.g., J&J Sports Prods., Inc. v. McAdam, No. 14 CV 5461, 2015 WL 8483362 (E.D.N.Y. Dec. 9, 2015) ($20 cover charge, 100 patrons present); J&J Sports Prods., Inc. v. 1400 Forest Ave. Rest. Corp., No. 13 CV 04299, 2014 WL 4467774 (E.D.N.Y. Sept. 9, 2014) ($8 cover charge, forty patrons present); J&J Sports Prods., Inc. v. Tellez, No. 11 CV 2823, 2011 WL 6371521 (E.D.N.Y. Dec. 20, 2011) (eighty-five patrons present). Here, as with the original Complaint, the Amended Complaint makes only conclusory

allegations that, based on information and belief, Gonzalez, "as the Owner and Principal of L'Mulato Barbershop. . . had the right and ability to supervise" as well as the "obligation to supervise the activities of L'Mulato Barbershop" on September 16, 2017. (See M&O at 8; Am. Compl. ¶ 9; Compl. ¶ 10.) Further, plaintiff alleges that Gonzalez "had an obvious and direct financial interest in the activities of L'Mulato Barbershop" and "was a moving and active conscious force behind the operation, advertising and promotion of L'Mulato Barbershop." (Am. Compl. ¶¶ 12, 14; Compl. ¶¶ 13, 15.) In the previous order, Judge Chen explained that "courts in this District time and time have found such conclusory allegations to be insufficient to hold individual defendants vicariously liable." (M&O at 8.) See also, e.g., Dang, 2020 WL 6364898, at *3; J&J Sports Prods., Inc. v. Shaw, No. 19 CV 2383, 2020 WL 1034361, at *4 (E.D.N.Y. Feb. 12, 2020), report and recommendation adopted, 2020 WL 1031804 (E.D.N.Y. Mar. 3, 2020); J&J Sports Prods., Inc. v. Ferreiras, No. 15 CV 6546, 2018 WL 6168557, at *10-11 (E.D.N.Y. Nov. 20 2018), report and recommendation adopted in relevant part, 2020 WL 2553265, at *3-5 (E.D.N.Y. May 20, 2020); J&J Sports Prods., Inc. v. Three My Corp., No. 17 CV 3383, 2018 WL 4522097, at *2 (E.D.N.Y. Sept. 5, 2018), report and recommendation adopted, 2018 WL 4561460 (E.D.N.Y. Sept. 24, 2018); J&J Sports Prods., Inc. v. Classico Bar Inc., No. 16 CV 5639, 2018 WL 2022166, at *3 (E.D.N.Y. Feb. 13, 2018), report and recommendation adopted, 2018 WL 1168582 (E.D.N.Y. Mar. 6, 2018); LX Food Grocery, 2016 WL 6905946, at *3; J&J Sports Prods., Inc. v. El Ojo Aqua Corp., No. 13 CV 6173, 2014 WL 4700014, at *4 (E.D.N.Y. Aug, 29, 2014), report and recommendation adopted, 2014 WL 4699704 (E.D.N.Y Sept. 22, 2014).

Further, although plaintiff states that Gonzalez "had an obvious and direct financial interest in the activities of L'Mulato Barbershop," this statement lacks evidentiary

support, such as sworn testimony or additional documentation, that establishes Gonzalez had an obvious and direct financial interest.  (Am. Compl. ¶ 12; Compl. ¶ 13.)  Instead, the evidence shows that there was no cover charged to enter L'Mulato Barbershop, only ten patrons were in attendance, and the Program was shown on one television.  (Lubrano Aff.)  Courts have found, as Judge Chen noted in the previous order, that this evidence is "patently insufficient" to establish an obvious and direct financial interest on the part of an individual defendant.  (M&O at 9); cf. Dang, 2020 WL 6364898, at *3 (declining to find obvious and direct financial interest with forty-seven to fifty-one patrons in attendance and no cover fee); Dominguez, 2020 WL 6434735, at *4 (finding insufficient evidence to show an obvious and direct financial interest based on five patrons present and no cover fee); Shaw, 2020 WL 1034361, at *4 (declining to find obvious and direct financial interest when the investigator observed approximately ten patrons in the establishment and was not charged a cover fee); J&J Sports Prods., Inc. v. Brown, No. 18 CV 2489, 2019 WL 612225, at *3, *5 (E.D.N.Y. Jan. 10, 2019) (finding insufficient evidence of a financial interest when fifty patrons were present at the time of the Program, it was shown on one television, and no cover fee was charged), report and recommendation adopted, 2019 WL 591544 (E.D.N.Y. Feb. 13, 2019).

Plaintiff has made no substantive changes in the Amended Complaint to alter the court's previous conclusion.  (See Am. Compl. ¶¶ 9-14; Compl. ¶¶ 10-15; Pl.'s Mem. at 2, 8-10.) Therefore, I respectfully recommend that plaintiff's motion be denied.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that plaintiff's motion for default judgment be denied.  Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Chen and to my chambers, within

fourteen (14) days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED R. CIV. P. 72 (b)(2).  Plaintiff is directed to serve copies of this Report and Recommendation on the defendant within three days of the date of this Report and Recommendation and to file proof of service by ECF.

Respectfully submitted,

_____/s/_____

ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      July 18, 2022